**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ELIMAYDA C.,[1]

Plaintiff,

v. Case No. 8:25-cv-1633-KRH

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
______________________________/

**OPINION AND ORDER**

Elimayda C. filed her claim for supplemental security income ("SSI") and disability insurance benefits ("DIB"), alleging disability beginning on January 1, 2021. After the Social Security Administration initially and upon reconsideration denied her application, she requested and was granted a hearing before an administrative law judge ("ALJ"). The ALJ held the hearing, and he issued a decision finding Elimayda C. not disabled. The Appeals Council denied review, so Elimayda C. appealed. As explained below, the Commissioner's decision is reversed, and this action is remanded for further proceedings under sentence four of 42 U.S.C. § 405(g).

[1] Consistent with guidance from the Judicial Conference's Committee on Court Administration and Case Management regarding privacy concerns in **Social Security** cases, the undersigned identifies the plaintiff only by first name and last initial.

## Background

Elimayda C. was 40 years old at the time she applied for SSI alleging disability. She at least completed high school and has the past relevant work experience as a chauffeur. She suffers from degenerative disc disease, diabetes, sleep apnea, obesity, hypertension, and other disorders.

The ALJ evaluated Elimayda C.'s claim using the five-step sequential evaluation process for determining disability. At step one, he found that she had not engaged in substantial gainful activity since January 1, 2021, the alleged disability onset date. (Doc. 18-2 at 28). At step two, he found that Elimayda C. had the following severe impairments: peripheral neuropathy, fibromyalgia, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, diabetes mellitus, obstructive sleep apnea, and obesity. (Doc. 18-2 at 28). The ALJ found her medically determinable mental impairment of depressive disorder, bipolar disorder, anxiety disorder, and panic disorder non-severe, rating each of the four paragraph "B" functional areas—including concentrating, persisting, or maintain pace—as no more than mild. In support of that rating, the ALJ stated that he found persuasive "the findings of the State agency psychological consultants, as restated and revised at the reconsideration level, determining the claimant as having no more than a mild limitation in any area of work-related cognitive, social, executive, or adaptive functioning (Exhibits B1A, B4A, B7A, B8A)." (Doc. 18-2 at 29).

At step three, he found that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Doc. 18-2 at 29). The ALJ then examined the record and determined that Elimayda C. had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand and/or walk for four (4) hours in an eight (8) hour workday." (Doc. 18-2 at 31). He also found the following:

> She can frequently handle and finger with both upper extremities. The claimant can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She can frequently balance. The claimant can occasionally stoop, kneel or crouch. She can never crawl. The claimant can tolerate frequent exposure to unprotected heights and atmospheric conditions. She can frequently operate hazardous machinery."

(Doc. 18-2 at 31).

At step four, the ALJ found that Elimayda C. had the relevant past work as a chauffeur. (Doc. 18-2 at 35). The vocational expert ("VE"), however, testified that an individual with Elimayda C.'s RFC "would be unable to perform the requirements of [chauffeur]." (Doc. 18-2 at 35). At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that Elimayda C. can perform. (Doc. 18-2 at 37). Relying on the testimony of the VE, the ALJ concluded Elimayda C. can perform the jobs of retail marker (DOT 209.587-034), photocopying machine operator (DOT 207.685-014), and folding machine operator (DOT 208.685-014). (Doc. 18-2 at 37). He therefore found that Elimayda C. was not disabled. (Doc. 18-2 at 37).

## Legal Standard

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweight the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "An ALJ's decision is not based on substantial evidence, and improper legal standards were applied if the ALJ's inaccuracies and mischaracterizations taint the record." *Sneed v. Berryhill*, No. 3:15-cv-591-SRW, 2017 WL 1230849, at *5 (M.D. Ala. Mar. 31, 2017) (internal quotations omitted). "Moreover, when the inaccuracy or mischaracterization is the result of an ALJ's failure to acknowledge and discuss material evidence that conflicts with the ALJ's findings, the ALJ commits an error of law as the decision fails to explain the basis for the ALJ's conclusions sufficiently to permit a court to complete a meaningful review on appeal." *Id.* (citation omitted).

ALJs are "required to build an accurate and logical bridge from the evidence to his or her conclusion." *Flentroy-Tennant v. Astrue*, No. 3:07-cv-101-J-TEM, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008). When an ALJ mischaracterizes or misstates the record, the ALJ has not "built the requisite accurate and logical bridge from the evidence to the conclusion." *Id.* The ALJ's decision is therefore not supported by substantial evidence when the ALJ mischaracterizes material

evidence. *Id.* "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## Discussion

Elimayda C. raises three issues on appeal: She argues that remand is required because (1) the ALJ ignored a state agency psychologist's opinion which describes greater limitations than those adopted in the ALJ's RFC and hypothetical question to the VE; (2) the ALJ made none of the required findings regarding Elimayda C.'s use of a walker and wheelchair; and (3) the ALJ relied almost exclusively on an obsolete occupation in finding that Elimayda C. was not disabled. Pl.'s Br. (Doc. 20 at 2-3). Given the conclusion, only the first is discussed below.

### A. The ALJ's Paragraph B Criteria Rating and RRC

For claims filed after March 2017, an ALJ evaluates medical opinions and prior administrative medical findings under 20 C.F.R. §§ 404.1520c, 416.920c, articulating how persuasive he finds each medical source primarily by reference to supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations contain a source-level articulation requirement: an ALJ need not address every limitation identified by a single source and may consider multiple opinions from one source together. *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1); *see Cunningham v. Comm'r of Soc. Sec.*, No. 2:20-cv-913-SPC-NPM, 2022 WL 1085548, at *5 (M.D. Fla. Feb. 9, 2022), *R&R adopted*, 2022 WL 736177 (M.D. Fla. Mar. 11, 2022).

That principle does not resolve this case. In decisions applying that requirement, the ALJ accurately described the substance of the opinion at issue before declining to adopt some or all of it. *See, e.g.*, *Dutt v. Comm'r of Soc. Sec.*, No. 6:23-cv-472-DCI, 2024 WL 6881570, at *2 (M.D. Fla. Feb. 2, 2024) (ALJ quoted and discussed the specific opinion, rejecting only the portion unsupported by the source's own notes); *Harris v. Kijakazi*, No. 8:22-cv-2145-AAS, 2023 WL 7892423, at *3-4 (M.D. Fla. Nov. 16, 2023) (ALJ addressed each source individually with specific supportability and consistency findings); *Robinson v. Comm'r of Soc. Sec.*, No. 5:22-cv-18-MAP, 2023 WL 2473427, at *5 (M.D. Fla. Mar. 13, 2023) (ALJ's rejection was supported by a detailed, source-specific discussion of the treatment record). Source-level articulation presupposes that the ALJ's description of what a source found is accurate. It does not immunize an inaccurate description of a source's findings from review.

Here, the problem lies not in what the ALJ said the state agency consultants found, but in what he cited as support for it. On its face, the ALJ's statement is limited to the findings "as restated and revised at the reconsideration level"—that is, to the opinion of Edward Jonas, Ph.D., who found no more than mild limitation in all four functional areas (Exhibits B7A, B8A). But the ALJ cited all four exhibits together (B1A, B4A, B7A, and B8A) as support for that conclusion. Exhibits B1A and B4A, however, are the initial-level exhibits containing the opinion of Kelly Roberts, Psy.D., who rated Elimayda C.'s ability to concentrate, persist, or maintain pace as moderately, not mildly, limited. Dr. Roberts identified specific

work-related manifestations of that limitation: moderately limited ability to maintain attention and concentration for extended periods, moderately limited ability to work in coordination with or in proximity to others without being distracted by them, and moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Exhibits B1A, B4A). Citing these two exhibits as support for a mild-in-all-areas conclusion that only the reconsideration-level exhibits support mischaracterizes the record. It treats Dr. Roberts's contrary finding as though it were consistent with Dr. Jonas's, when it is not.

This is not a case, as the Commissioner suggests, where the ALJ simply declined to itemize every limitation within an opinion he otherwise engaged with. The ALJ's decision reflects no engagement with Dr. Roberts's specific findings at all. Rather, the ALJ's citation to her exhibits as support for a conclusion her own findings contradict suggest a possibility that her opinion was overlooked, not weighed. The Commissioner's response brief does not dispute the content of Dr. Roberts's opinion. Instead, the Commissioner argues that the ALJ's reliance on the reconsideration-level findings of Edward Jonas, Ph.D., who, unlike Dr. Roberts, found only mild limitation in all four functional areas were supported by medical examination findings. Def.'s Br. (Doc. 26 at 9-10). But addressing Dr. Jonas's opinion does not cure the ALJ's citation of Exhibits B1A and B4A which contain Dr. Roberts's contrary opinion—as though they supported a conclusion that Dr.

Jonas's findings establish. *See Johnson v. Comm'r of Soc. Sec.*, No. 6:20-cv-1381-DNF, 2021 WL 4305091, at *4-5 (M.D. Fla. Sept. 22, 2021) (remand warranted where the ALJ's stated basis for discounting three opinions was contradicted by the very treatment records the ALJ cited as support); *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 354 (11th Cir. 2018) (rejecting an ALJ's characterization of the evidence as "minimal" where the record showed significant abnormalities).

Nor does the record support treating the ALJ's citation to Dr. Jonas's reconsideration-level opinion as an adequate resolution of the tension with Dr. Roberts's initial-level opinion. The regulations anticipate that an ALJ may confront differing prior administrative medical findings on the same issue. Where such findings are equally well-supported and equally consistent with the record but reach different conclusions, the regulations require the ALJ to explain how the remaining persuasiveness factors were considered in choosing between them. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). That analysis presupposes an accurate account of what each finding says. Here, the ALJ's decision does not acknowledge that Dr. Roberts and Dr. Jonas reached different conclusions regarding Elimayda C.'s concentration, persistence, and pace limitations at all. Instead, its citation of Exhibits B1A and B4A alongside B7A and B8A treats the two sets of findings as though they were consistent, obscuring rather than resolving the conflict.

The Court finds that the mischaracterization is material and not harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). The ALJ cites it as support

for the determination that Elimayda C.'s mental impairments, including her limitation in concentrating, persisting, or maintaining pace, cause no more than mild limitation and are therefore non-severe. *See Bissinger v. Comm'r of Soc. Sec.*, No. 6:13-cv-1602-ORL-31, 2014 WL 5093981, at *5 (M.D. Fla. Oct. 9, 2014) (misstatement of fact material where it was the ALJ's unequivocally stated basis for the challenged finding); *see also Barbero v. Comm'r of Soc. Sec.*, No. 6:18-cv-2158-ORL-DCI, 2020 WL 495159, at *6-7 (M. D. Fla. Jan. 30, 2020) (mischaracterization not harmless where it was the ALJ's sole remaining articulated reason for the challenged weight determination). It may be that the ALJ ultimately finds Dr. Jonas's opinions more persuasive as supported and consistent. But the ALJ—not this Court—must make that decision. And on this record, the Court cannot say that the ALJ did so.

An error in a step-two severity finding is ordinarily harmless where the ALJ nonetheless proceeds through the sequential evaluation, duly considers the claimant's mental impairment in assessing the RFC and reaches conclusions about the claimant's mental capabilities supported by substantial evidence. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019); *see also Lovett v. Kijakazi*, No. 23-cv-60443, 2023 WL 7279317, at *8 (S.D. Fla. Nov. 3, 2023) (applying *Schink* and finding no error where the ALJ's RFC discussion substantively addressed the claimant's mental-status examination findings); *Dutt*, 2024 WL 6881570, at *2-3 (same). This standard demands more than the general threshold showing that the ALJ found some severe impairment and proceeded

beyond step two. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). *Schink* itself involved an ALJ who proceeded through the sequential evaluation after finding other severe impairments, yet the Eleventh Circuit still required a genuine, substantive assessment of the non-severe mental impairment's effect on the RFC. 935 F.3d at 1268-69.

Here, the ALJ expressly stated that the RFC's limitations "reflect[] the degree of limitation the undersigned has found in the paragraph B mental function analysis," carrying the flawed paragraph B criteria rating forward into the RFC rather than reassessing it. (Doc. 18-2 at 29-30). The RFC narrative contains only two brief, generic sentences noting that the record shows little evidence of impaired attention, concentration or focus—grounded in the absence of reported medication side-effects and in physical and neurological examination findings, not in any engagement with Dr. Roberts's opinion or its psychiatric basis. Those sentences do not address two of the three moderate limitations Dr. Roberts identified: the ability to work in coordination with or in proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruptions from the psychologically based symptoms and to perform at a consistent pace. Where an ALJ finds moderate limitation in concentration, persistence, or pace, that limitation must be reflected in the RFC, or the ALJ must explain, based on the medical evidence, why the claimant can nonetheless perform simple, unskilled work despite it. *See Winschel*, 63 F.3d at 1180-81. Because the mischaracterization foreclosed any finding of moderate

limitation, the ALJ never undertook that analysis with respect to the limitations Dr. Roberts identified.

This case closely parallels *Martin v. Kijakazi*, in which the ALJ likewise found the claimant's mental impairments non-severe at step two, stated that the RFC "reflect[ed] the degree of limitation . . . found in the 'paragraph B' mental function analysis," and then discussed only physical impairments in the RFC narrative. No. 4:20-cv-10149-JB, 2022 WL 17987332, at *9 (S.D. Fla. Sept. 28, 2022) (quotation omitted). The court there rejected the Commissioner's argument that the ALJ's step-two findings combined with a persuasive state agency opinion were adequate to show the ALJ had considered the claimant's mental impairments in assessing the RFC. It held that the RFC's boilerplate cross-reference to the paragraph B criteria, unaccompanied by substantive discussion of the claimant's mental functioning, did not satisfy *Schink*. *Id.* The same is true here. *Cf. Stoloff v. Comm'r of Soc. Sec.*, No. 6:23-cv-0001-DCI, 2024 WL 1298826, at *8-9 (M.D. Fla. Mar. 27, 2024) (boilerplate paragraph B cross-reference sufficient where the ALJ's RFC discussion elsewhere substantively engaged with the evidence underlying the non-severe impairment).

Although Elimayda C. does not separately argue that the ALJ's paragraph B ratings (finding mild limitations in all four functioning areas) required further RFC analysis, that issue is closely related to the one just discussed and should be addressed on remand. An ALJ's finding of even mild limitation in a paragraph B area does not, standing alone, require a corresponding RFC restriction, but it does

require some assessment of the limitation's potential effect on the claimant's ability to work. *See Schink*, 935 F.3d at 1268-69; *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021) (reaffirming that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."); *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *8 (M.D. Fla. Dec. 21, 2021), *R&R adopted*, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022); *Mitchell v. Comm'r of Soc. Sec.*, No. 2:20-cv-236-NPM, 2021 WL 4305088, at *6 (M.D. Fla. Sept. 22, 2021).

Whether that assessment is adequately made turns on where the decision occurs. An ALJ's persuasiveness analysis of the relevant psychological opinions satisfied *Schink* when it appears within the RFC discussion itself, but not when it is confined to the step-two severity finding. *See Watson v. Comm'r of Soc. Sec.*, No. 24-10668, 2025 WL 274903, at *3 (11th Cir. Jan. 23, 2025) (per curiam) (distinguishing *Schink* because the ALJ's analysis of the psychological consultants' opinions appeared "in the same section of the opinion where the ALJ describes the evidence that supports the RFC," and holding that "the location of this analysis matters").

The Eleventh Circuit reached the same result on similar facts in *Arce v. Comm'r of Soc. Sec.*, No. 23-11315, 2024 WL 36061, at *2 (11th Cir. Jan. 3, 2024) (per curiam). There, the ALJ found the claimant's mental impairments mild at step two under the paragraph B criteria, but her RFC assessment at step four "apparently was limited to [the claimant's] physical abilities and impairments and

erroneously omitted considering her mental ones." *Id.* Although the ALJ stated she had "considered all symptoms," as the ALJ did here, the Court declined to assume the ALJ had silently considered the claimant's mental limitations and concluded they imposed no restriction, expressly refusing to "assume . . . *sub silencio*" that she had done so. *Id.* at *2 & n.1. The same pattern is present here. The ALJ's paragraph B ratings and the RFC's boilerplate cross-reference to them do not substitute for the substantive, RFC-stage engagement with Elimayda C.'s mental functioning articulated in *Arce* and *Schink*.

Here, the ALJ's persuasiveness analysis of Dr. Roberts's and Dr. Jonas's opinions occurs only at step two; the RFC narrative does not revisit it. The RFC narrative also fails to undertake the required assessment for three of the four paragraph B areas. On remand, the Commissioner should ensure the RFC determination reflects the required assessment, whatever severity rating the paragraph B criteria ultimately receive.

The ALJ's finding on the persuasiveness of the state agency psychological opinions, his ratings of the paragraph B criteria, and the RFC that flows from it are unsupported by substantial evidence. Remand is therefore required so that the ALJ may reevaluate Dr. Roberts's opinion and the other record evidence, reconsider Elimayda C.'s mental impairments, and expressly analyze whether those impairments impacted her RFC.

## B. Remaining Issues

Because remand is warranted on the ground discussed above, the Court does not reach Elimayda C.'s remaining assignments of error concerning the ALJ's evaluation of Elimayda C.'s use of an assistive device and the vocational expert's reliance on occupations she contends are obsolete. *See Diorio*, 721 F.2d at 729 (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors). On remand, the Commissioner may reevaluate the record as a whole, including Elimayda C.'s use of a walker and wheelchair and the vocational evidence supporting the step-five finding.

**ORDERED:**

1. The decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

2. The Clerk of Court is directed to enter judgment in Plaintiff's favor, terminate all scheduled events, and close the case.

In Fort Myers, Florida on September 15th, 2026.

Kevin R. Huguelet
United States Magistrate Judge